CHRISTIAN, J.,
delivered the opinion of the court.
This is an appeal from a decree of the circuit court of Clarke comity.
A transcript of the record, presented with the petition for appeal, discloses the following facts:
In the year 1854, one Peter Cain conveyed to Bowen, trustee, a tract of land in the county of Clarke, containing about 258 acres, in trust to secure to John Pierce, Jr., executor of Samuel Stipe, deceased, the payment of certain notes held by him as assignee of Hardesty, and to William F. Knight certain bonds executed by said Cain, and payable to said Knight.
*238 Afterwards, Barnett was substituted trustee in place of Bowen. Barnett, the substituted trustee, being required by Knight, one of the parties secured by said deed, to make sale of the land, advertised the sale thereof as required by the terms of said deed, but was enjoined from making said sale by order of the circuit court of Clarke or the judge thereof, upon a bill filed-by Peter Cain, to which William F. Knight and Neill Barnett, the trustee, alone were made parties.
Upon the hearing, the circuit court directed a sale of the land, and appointed Barnett a special commissioner to execute this decree of sale. At this sale Knight became the purchaser; and upon being reported to the court, the sale was approved and confirmed.
This decree of confirmation contains the following provision: “And said Barnett is further directed to take said Knight’s bond for the deferred payments of said purchase money, and thereupon execute and deliver to said *Knight a good and sufficient deed for said land so purchased by him, in said report mentioned, taking from said Knight at the same time a deed of trust to secure the payment of said deferred payments.”
It is further shown by the record, that on the 1st November, 1863, Barnett, the special commissioner, conveyed by deed executed on that day, the said tract of 258 acres to the purchaser. Knight, describing said land as the tract of land in the bill and proceedings mentioned in the suit- between Peter Cain, plaintiff, and Neill Barnett and William F. Knight, defendants, in the circuit court of Clarke county. In the same month, if not on the same day, Knight conveyed this land to Wood and Smith, the appellants in this suit. In that deed the land is described as the same land which was conveyed to said Knight by Neill Barnett, special commissioner.
It further appears 'that Commissioner Barnett, for some reason not stated in the record, instead of taking a deed of trust from Knight on this land -to secure the deferred payments at the same time (as directed by the court) that he conveyed it to Knight, took from Knight a deed of trust on another tract of land known as the George Knight tract, of which William Knighf was then seized and possessed as the devisee of said George Knight, his father.
It was this unauthorized act of Special Commissioner Barnett, that produces all the difficulty in the case, and from which has arisen harrassing and expensive litigation.
It turns out that this tract of land was charged in the hands of the devisee with certain legacies, which together with certain debts of William F. Knight, so encumbered it with liens prior to the deed of trust aforesaid, that it cannot be considered as any security whatever for the deferred payments due on the land sold by said special commissioner.
*There is a deed filed with the record, proper to be noticed here, before we proceed further. It is a deed executed by William F. Knight conveying the land purchased by him of Barnett, special commissioner. at the judicial sale above referred to, to Moore, trustee, to secure the deferred payments due from said Knight. But how this paper comes to be in the record, by whom it was produced and filed, or for what purpose, does not appear. It is noted by the clerk that “no acknowledgment or certificate thereof, or certificate of recordation, appears upon this paper.” If, as it may be, this deed was intended originally as the security for the deferred payments, it is plain this intention was never carried out. It was not filed with the record in the case of Cain v. Barnett and Knight, nor was it returned by Special Commissioner Barnett with his report. It was never acknowledged and never recorded, and may be regarded as out of the case. Certain it is, that both the commissioner and the purchaser, Knight, regarded the deed of trust on the George Knight land as the security given and taken for the deferred payments due on the land sold by said special commissioner.
Now, it will be remembered that in the deed of trust of April, 1854, which originally created a lien upon the tract of land sold by Commissioner Barnett in the suit of Cain v. Barnett and Knight, that deed secured first of all a debt due from Peter Cain to John Pierce, Jr., executor of Samuel Stipe, who was assignee of one Hardesty. This debt, thus secured, was assigned to Isaac Krebbs, the appellee in this suit. Not a dollar of this debt has ever been paid.
Krebbs filed his bill in the circuit court of Clarke to enforce his lien against the land (conveyed to secure his assignor in 1854), and of record in the clerk’s office of the county court of Clarke. To this bill the executors of Special Commissioner Barnett (he being dead), William *F. Knight, Wood and Smith, the appellants, and purchasers from Knight, are made parties. The bill sets forth the facts above detailed, and insists that the land purchased by Wood and Smith of William F. Knight, no matter to whom conveyed, is liable for the debt of which Krebbs is the owner, secured by the trust deed of 1854. To this bill Barnett’s executors demurred. The court sustained their demurrer, and put the plaintiff to his election, whether he would proceed against the executors of Barnett or against the purchasers, Wood and Smith, Barnett’s exec-plaintiff electing to proceed aghinst the purchasers’ Wood and Smith, Barnett’s executors were dismissed from the suit.
Wood and Smith answered the bill. In said answer they affirm “that they have no knowledge or information (other than the statement in said bill) respecting the indebtedness of Peter Cain, deceased, to James M. Hardesty, or as to the former giving his bond for $400, or for any other sum to the latter, or as to the assignment of such bond to John Pierce, Jr., executor of Samuel Stipe, deceased, or as to its subsequent assignment by said John Pierce, Jr., to the plaintiff— or as to what payments have been made thereon, either for principal or interest, or what *239 was the consideration of said bond, or that it or any other debts of said Peter Cain were secured by a deed of trust to Archibald Bowen, trustee, upon the tract of land mentioned in said bill; or that Neill Barnett was at any time substituted as a trustee in the place of said Archibald Bowen, or that as such substituted trustee he ever advertised the said land for sale; or that he had been restrained by any injunction from making such sale; or that any such injunction suit had at any time been instituted in this court; of what orders or decrees were made, or proceedings had in such suit; or who were, or were not parties to such suit, save that as they aver, these defendants were not, nor was either *of them, parties thereto. They, and each of them, are wholly ignorant as to the said matter, and as to all the other statements made in said bill of complaint, except such as they shall hereinafter plainly make answer to, and have no information in respect thereto, save what they have obtained from said bill of complaint. Further answering, these defendants say that some little while before the 3d day of November, 18(52, William F. Knight offered to sell them the tract of land in said bill mentioned, of which they had understood and believed that he was seized in absolute right, but they declined to make the purchase without having the records examined to ascertain if said land was free from all incumbrances and liens; that at that time, it being during the progress of the late civil war, it was not the habit of either of them to visit Berryville, the county seat of the county in which said land was situated, and neither of them did go there at that time, or about this matter of business; they therefore refused to buy unless he would obtain and produce to them a -certificate of the clerk of the county court of said county of Clarke, showing that said land was wholly unencumbered, so that they might safely buy and safely pay the purchase money thereon. These defendants further say that the said clerk did examine the records of his office, and did give a certificate that, so far as the records of his office showed, the only lien or incumbrance upon the lands proposed to be sold to them by said William F. Knight, was one in favor of the heirs of Francis O. Byrd, upon the small tract of twenty-nine acres, sixteen poles (embraced in said Knight’s deed to them, and which parcel is entirely distinct from the tract of land in the plaintiff’s bill of complaint mentioned), and that with this exception the said lands were entirely free from all lien or incumbrance.”
They affirm that such certificate of the clerk was produced *by Knight, and that they relying thereon, and with the full belief that the land was free from claim or incumbrance of any sort, concluded the purchase, received from Knight his deed, and paid to him the whole of the purchase money. Their claim, therefore, is that they are bona fide purchasers without notice of any prior lien, and that having paid all the purchase money, they are entitled to the land free from the lien asserted by the plaintiff, Krebbs.
They admit that they did not make any examination of the records of Clarke county, either by themselves or through their counsel, but living at some distance from the court-house, then quite inaccessible to them, they relied upon and acted upon the certificate of the clerk that there was on record no lien or incumbrance on said land.
The circuit court held, by its decree entered at its November term, 1876, that the land in the bill and proceedings mentioned is subject in the hands of the purchaser, “to the lien of the deed of trust executed by Peter Cain on the 3d day of April, 1854, to secure the several bonds therein named, payable to James M. Hardesty, one of which bonds is that due complainant, and filed as an exhibit with his bill.” From this decree Wood and Smith applied for and obtained an appeal from one of the judges of this court.
The court is of opinion that there is no error in this decree. We think that this case must be governed by the principles declared in Burwell’s ex’ors v. Fauber & als., 21 Gratt. 446, and Long et al. v. Weller’s ex’or et als., 29 Gratt. 347. Tn the former case the president of this court, with whom all the judges concurred on this point, said: “The purchaser (as in the case before us), claims to be entitled as a bona fide purchaser. Certainly a bona fide purchaser for value, and without notice, is a great favorite of a court of equity, and that court will not *disarm such purchaser of a legal advantage. But we must not permit ourselves to be mislead by words or maxims in this matter. Other persons are entitled to the protection and the favor of a court of equity, as well as purchasers. Creditors are such persons. * * * Purchasers are bound to use a due degree of caution in making their purchasers, or they will not be entitled to protection. Caveat emptor is one of the best settled maxims of the law, and applies exclusively to a purchaser. He must take care to make due enquiries or he may not be a bona fide purchaser. He is bound not only by actual, but also by constructive notice, which is the same in effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice.” And in Long et als. v. Weller’s ex’or (supra), Judge Burks, in discussing the doctrine of constructive notice. says: “Wherever enquiry is a duty, the party bound to make it is affected with knowledge of all, which he would have discovered had he performed the duty.” And he quotes from Mr. Justice Strong in Cardova v. Hood, 17 Wall. U. S. R. 1, in which that eminent judge thus tersely and concisely states the same principle: “Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge it *240 self.” See also Brush v. Ware, 15 Peters 93, 114, and Le Neve v. Le Neve, and notes thereon; 2 Lead Cases, pt. 1, 109, 127, top 23 (Marg.).
Now, applying the doctrines of these cases to the case before us, I think it is plain that the appellants, Wood and' Smith, had constructive notice of the complainant’s lien.
The deed' from Knight to them refers in terms to the *deed from Barnett, special commissioner, to Knight, and the latter refers directly to the proceedings in the suit of Cain v. Knight and Barnett. The proceedings in that suit pointed directly to the deed of trust from Peter Cain to Bowen, trustee, for whom Barnett was substituted. conveying this very tract of land, first to secure a debt of which Krebbs was the remote assignee, and second,to secure a debt to Knight. This very deed was filed as an exhibit with that bill. An inspection of that record, to which their title deed unerringly pointed, would have informed them that the first lien on this land was in favor of Hardesty’s assignee, who was not made a party to that suit, Knight and Barnett, trustee, being the sole defendants. They would further have discovered that the special commissioner, Barn’ett, was directed, when he delivered a deed conveying it to Knight, at the same time to take a deed of trust on this land (we say upon this land, for upon no just construction of the decree could any other land have been referred to), to secure the deferred payments. Upon looking to the records they would have found that no such deed was taken, but a deed, unauthorized by the decree, was taken on other land already covered by pre-existing lien, and that the deed by the special commissioner having been delivered without authority, was void.
Knowledge of all these facts would have been brought home to them, if they had used ordinary diligence in seeking that knowledge which was pointed to by the very title papers under_ which they held the land from Knight-. It is insisted, however, that the appellants did refuse to receive the conveyance from Knight, or to pay the purchase money until'Knight had produced a certificate of the clerk that there was no lien or incumbrance, and that they had thus used due diligence in enquiring into the state of the title. But this was not sufficient to release them as bona fide purchasers without notice. The *certificate of the clerk is not of itself sufficient; for a clerk may be careless, or ignorant, or even corrupt, or he may give an erroneous opinion as to whether there be liens or not existing. We mean, of course, to cast no reflections on the clerk in this case, but we speak generally, and simply affirm that of itself such a certificate of a clerk, as the one produced, does not excuse the parties from further enquiry. The same sources of information and 'knowledge were open to them or their counsel, through the public records, as were open to the clerk. If they did not choose to examine into the sources of their title .either themselves, or through counsel, they have sustained loss by their own negligence, from which a court of equity will not relieve them. As was said by Mr. Justice McLean in Brush v. Ware (supra) : “No principle is better established than that a purchaser must look to every part of the title which is essential to its validity. The law requires reasonable diligence in a purchaser to ascertain any defect of title. But when such defect is brought to his knowledge’’ (as in this case it would have been done if the records to which his deed pointed had been properly examined), “no inconvenience will excuse him from the strictest scrutiny.”
Upon the whole case, we are of opinion that there is no error in the decree of the circuit court, and that the same be affirmed.
Decree affirmed.