## ESSEX ET AL. *v.* HOPKINS ET AL.

[No. 7,555. Filed April 26, 1912.]

1. APPEAL.—*Review.—Harmless Error.—Ruling on Demurrer for Misjoinder of Causes.*—Under the provisions of §346 Burns 1908, §341 R. S. 1881, erroneously sustaining a demurrer for misjoinder of causes of action is not cause for reversal. p. 320.

2. DEEDS.—*Conveyance to Trustees of Church.—Construction.—Estate Conveyed.*—A conveyance to named persons, designated as the trustees of the parsonage of a ministerial charge, and their successors in office, "in trust for the use and benefit of the ministry and membership of the Methodist Episcopal Church in the United States of America, subject to the discipline, usage and ministerial appointments of said church," and providing for disposition of the proceeds, in the event of sale, in accordance with said discipline, does not give to either of the churches composing such ministerial charge any legal estate or interest in the property conveyed. p. 321.

3. DEEDS.—*Execution.—Merger of Previous Negotiations.*—Upon the execution of a deed, all previous negotiations in reference thereto, whether parol or written, are merged therein and the terms of the deed will control. p. 321.

4. TRUSTS.—*Resulting Trusts.—Acts of Church Officers.*—Where two churches constituted one ministerial charge, each having its

own board of trustees and local officers who constituted the quarterly conference of the charge, and such officers, sitting as the quarterly conference, decided on the purchase of a new parsonage, recommending the amount to be paid by each church and that the property should belong to the two churches jointly, such action did not amount to a contract between the two churches so as to cause the conveyance, taken in the names of persons designated as trustees of the parsonage of the charge for the use and benefit of the ministry and membership of the church in the United States, to operate as a resulting trust in favor of said two churches under the provisions of §4019 Burns 1908, §2976 R. S. 1881, excepting certain cases from the provisions of §4017 Burns 1908, §2974 R. S. 1881, that no trust shall result in favor of one paying the consideration for a conveyance made to another.    p. 322.

5.  RELIGIOUS SOCIETIES.—*Corporate Powers.—Acts of Trustees.*—Under the provisions of §4984 Burns 1908, §3824 R. S. 1881, the trustees of a religious society are a body politic and corporate under the name and style of the society, whose acts as a board are binding on the society, but they cannot bind it by their individual action.    p. 323.

From Bartholomew Circuit Court; *Marshall Hacker,* Judge.

Action by Thomas Essex and others as trustees of the Methodist Episcopal Church of Old St. Louis against Dennis C. Hopkins and others as trustees of the Methodist Episcopal Church of Hope and others.  From a judgment for defendants, the plaintiffs appeal.  *Affirmed.*

*John W. Donaker* and *Ralph H. Spaugh,* for appellants.
*Francis T. Hord* and *James F. Cox,* for appellees.

LAIRY, J.—This action involves a controversy between the trustees of the Methodist Episcopal Church of Old St. Louis and the trustees of the Methodist Episcopal Church of Hope.

At the time of the transactions out of which this litigation arises, the Hope church and the Old St. Louis Church constituted one ministerial charge, known as the "Hope charge." Each church had its own board of trustees and local officers, and transacted its own business affairs, and the local officers for the two churches constituted the quarterly conference

and also the official board of the Hope charge, which transacted the business of said charge.

The facts as gathered from the complaint, are substantially, as follows: In November, 1897, at a meeting of the quarterly conference, a committee was appointed to devise some plan for the improvement of the parsonage of such charge, and at the next meeting of the quarterly conference, held in February, 1898, this committee made a report in writing, in which it recommended the sale of the old parsonage, and the purchase of a lot and the erection of a new parsonage thereon. In the report it was estimated that the purchase of the lot and the erection of the new parsonage, as planned, would cost $1,600, and that the old parsonage could be sold for $400, leaving a balance of $1,200 to be raised by the two churches. The report recommended that the Old St. Louis church pay $300 of this amount and that the Hope church pay the remainder. The report concluded with the language following: "In view of the foregoing division of one-fourth and three-fourths of the expense and to make all parties safe we offer the following: Resolved: that the parsonage property belong jointly to the Old St. Louis and Hope churches. The Old St. Louis claim to cover one-fourth its value and Hope the other three-fourths. We recommend that subscriptions be made payable as follows: One-fourth on or before September 1st, 1898, and the other half on or before January 1st, 1899, and that the Parsonage Trustees with the Pastor and a committee of one from each of the points shall constitute the soliciting committee."

This report was adopted by the quarterly conference and in pursuance thereof a building committee was appointed, which purchased a lot and erected a parsonage thereon. The deed to the property was taken to "Samuel P. Hitchcock, Logan T. Chitty and Thomas Dodd, Trustees of the M. E. Parsonage of Hope, Indiana Charge and their successors in office, in trust for the use and benefit of the ministry and

membership of the Methodist Episcopal Church in the United States of America, subject to the discipline, usage and ministerial appointments of said church as from time to time authorized and declared and, if sold, the proceeds shall be disposed of and used in accordance with the provisions of said discipline.''

The church of Old St. Louis contributed and paid toward the purchase of said lot and the erection of the building thereon more than $500, and the property so provided was occupied and used as a parsonage by the minister of Hope charge continually until November 8, 1906, during all of which time the Hope charge consisted of the Hope church and the church of Old St. Louis. On November 8, 1906, a meeting of the quarterly conference and of the official board of Hope charge was held and presided over by the presiding elder of the district. By the action of this meeting the Hope church was made a separate ministerial charge and the society of Old St. Louis was separated therefrom. This separation was agreed to by the members of the quarterly conference and the official board who were present from and representing the Old St. Louis society, on the condition that the society which they represented should be paid by the Hope society the value of the one-fourth interest which it claimed in the parsonage property. This arrangement was agreed to by the members of the quarterly conference and the official board representing the Hope society, and a motion was made and unanimously adopted at said meeting to the effect that the Hope pastoral charge be dissolved and that the Hope society pay the Old St. Louis church society for its fourth interest in the parsonage property. A committee was appointed at this meeting consisting of one member from the Old St. Louis church society, and two members from the Hope church society for the purpose of appraising the one-fourth interest in said parsonage property, in pursuance of said motion; but the members of the committee from the

Hope society refused to act with the members from Old St. Louis society, and have failed and refused to fix the value of said property or the one-fourth interest thereof.

The Hope society after November 8, 1906, took possession of the parsonage property, and has ever since held, and still holds the same, and has always refused, and still refuses to pay to the Old St. Louis church the one-fourth value of said property, or any part thereof.

The complaint is in two paragraphs. The first sets out in detail the facts heretofore recited, and avers that appellants, as trustees of the Old St. Louis church society, are the owners of the undivided one-fourth interest in the real estate described, and defendants are the owners of the undivided three-fourths thereof; that the property is of the value of about $2,500, and is undivisible. The relief asked is that appellants be declared the owners of the undivided one-fourth interest in said property; that it be declared undivisible, and ordered sold; and that the proceeds be ordered to be distributed one-fourth to appellant and three-fourths to appellee.

The second paragraph states practically the same facts as the first, with the exception of the averments on the subject of partition. This paragraph alleges that the one-fourth interest in said real estate is of the value of $750, and concludes with a prayer for judgment in that amount.

Appellees filed a demurrer to the complaint as a whole, on the ground that the two causes of action were improperly joined, and also filed a separate demurrer to each paragraph of complaint, on the ground that neither of such paragraphs stated facts sufficient to constitute a cause of action. All these demurrers were sustained, and appellants refusing to amend or plead further judgment was rendered against them, from which this appeal is prosecuted.

The action of the court in sustaining the demurrer to the complaint as a whole, on the ground that two causes of

1. action were improperly joined, presents no reversible error. Even if two causes of action were improperly

joined, such a ruling would be harmless, as the only effect would be to require that the separate paragraphs of complaint be docketed as distinct actions. §346 Burns 1908, §341 R. S. 1881; *Langsdale* v. *Woolen* (1889), 120 Ind. 16, 21 N. E. 659; *Miller* v. *Evansville Nat. Bank* (1884), 99 Ind. 272.

In this case the court also sustained the separate demurrer to each paragraph of complaint, and rendered judgment against appellants on the merits. This requires us to consider the sufficiency of each paragraph of complaint.

2. Under the terms of the deed it is clear that neither of said churches has any legal estate or interest in said parsonage property. The legal title is held by the parsonage trustees in trust for the use and benefit of the ministry and membership of the Methodist Episcopal Church in the United States of America.

3. No express trust in the real estate in question or any part thereof was created by the deed in favor of appellants, but, on the contrary, an express trust was created in favor of the ministry and membership of the Methodist Episcopal Church in the United States of America. When a deed has been executed, all previous negotiations in reference thereto, whether parol or written, are merged therein. If there are any inconsistencies between the original terms of the agreement and the deed, the terms of the deed will control. *Phillbrook* v. *Emswiler* (1884), 92 Ind. 590; *Turner* v. *Cool* (1864), 23 Ind. 56, 85 Am. Dec. 449; *Smith* v. *McClain* (1896), 146 Ind. 77, 45 N. E. 41.

It is claimed on behalf of appellants that, under the averments of the first paragraph of complaint, a trust was created by operation of law, known as an implied or resulting trust, by which the trustees of the parsonage held the title thereto in trust, one-fourth for the church society of Old St. Louis and three-fourths for the church society of Hope.

Section 4017 Burns 1908, §2974 R. S. 1881, provides that

"When a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by
4. another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections." The next section does not relate to cases such as the one under consideration, but §4019 Burns 1908, §2976 R. S. 1881, provides that the provisions of the section just referred to shall not extend to three classes of cases expressly designated, viz.: (1) When it appears that the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid; (2) when such alienee, in violation of some trust, shall have purchased the land with money not his own; (3) when it shall be made to appear that by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall rest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof.

Appellants do not seriously contend that the facts pleaded show a resulting trust under the first or second provision of §4019, supra, but they claim that the facts pleaded do show: (1) that the purchase money for the parsonage was furnished by the two church societies in the proportion of one-fourth and three-fourths; (2) that the conveyance was made to and the title vested in the trustees of the Methodist Episcopal parsonage of Hope charge; (3) that such conveyance was made under an agreement entered into in good faith, and without any fraudulent intent, between the two church societies, by the terms of which the parsonage trustees were to hold such real estate in trust, one-fourth for the Old St. Louis church society and three-fourths for the Hope church society. Such a state of facts is sufficient to show a resulting trust. We think, however, that the facts pleaded fail to show that any agreement was entered into between the two church societies, to the effect that the parsonage property

was to be held by the parsonage trustees in trust for such church societies or either of them.

The report of the committee, together with the resolution forming a part thereof, which was adopted by the quarterly conference, does not amount to such a contract. From the facts pleaded, it does not appear that either the quarterly conference or the official board had any power to make a contract for the two churches that would be binding on either of them. Each church society had its own board of trustees. These trustees had power to act for the church organization which they represented when met as a board for that purpose, and the pleading fails to show that the board of trustees, or either of the church societies interested, took any action or made any agreement whatever in reference to the parsonage or to the manner in which the title should be taken or held. Section 9 of the act touching societies and lodges provides that the trustees thereof shall be deemed a body politic and corporate, under such name and style as the society may elect, and under that name shall have power to contract and sue, be contracted with and sued with like effect as other persons or corporations. §4984 Burns 1908, §3824 R. S. 1881. See, also, *Board, etc.*, v. *Shulze* (1878), 61 Ind. 511.

The trustees of a church cannot, by their individual action, bind the organization which they represent. Their acts are binding on the organization only when they meet and act as a board. *First Presbyterian Church, etc.*, v. *McColly* (1906), 126 Ill. App. 333; 8 Current Law 1719.

There is no averment in the complaint that the board of trustees of the church society of Hope and the board of trustees of the church society of Old St. Louis entered into any contract with each other or with the board of parsonage trustees to the effect that the title to the parsonage property should be held in trust for either of said church societies. It does not appear from the averments that there was any provision of the church discipline giving to the quarterly

conference or to the official board power to bind, by their action, the various church societies comprising the ministerial charge.  As the quarterly conference had no power by its action to bind the church societies comprising the ministerial charge, we must hold that the action of the quarterly conference, in accepting the report and adopting the resolution relied upon by appellants, was acting simply in an advisory capacity.  As the suggestion was never embodied in a contract between the two church societies, nor carried forward into the deed, it must be presumed that it was abandoned. No trust, either express or implied in favor of either of the church societies, is shown by the averments of the first paragraph of complaint.  This paragraph, therefore, does not state facts sufficient to constitute a cause of action for partition.

Enough has been said to show that the quarterly conference had no authority to bind the church society of Hope to pay to the other church society of Old St. Louis the value of one-fourth of the parsonage property.

It must follow that the second paragraph of complaint was also insufficient, and the court did not err in sustaining a demurrer thereto.

Judgment affirmed.

NOTE.—Reported in 98 N E. 307.  See, also, under (1) 31 Cyc. 358; (2) 34 Cyc. 1153, 1157; (3) 17 Cyc. 613; (4) 39 Cyc. 121; (5) 24 Cyc. 1134.  As to contests between factions in a church regarding church property, see 100 Am. St. 745.